MARY C. D. KRETH v. JAMES A. ROGERS et al.

*Fraud—Mortgage—Registration—Notice—Evidence—Presumption—Sale.*

K. sold to B. a stock of Goods on credit, and to secure the purchase money took a mortgage thereon and all property of like character which B. should subsequently add to the stock, which was duly registered, and in which it was stipulated that B. should keep the stock up to its then value, and pay cash for all additions thereto, keep the property insured, and pay all taxes, &c. B. took possession, carried on the business, making payments upon the purchase notes, selling some of the goods embraced in the mortgage and purchasing others, which he so intermingled with the original stock as to render them indistinguishable. He then executed a second mortgage to the defendants to secure debts contracted for goods to replenish the stock, which was also duly registered, under which they immediately took possession; *Held:*

1. That the mortgage to K. was not fraudulent upon its face, and any presumption of fraud arising from the fact of B.'s possession and sales was rebutted by the other stipulations in the deed and the facts recited.

2. That the goods having been intermingled without the fault of K., and the defendants having sold some of them to B. with notice of K.'s

mortgage, the burden was on them to prove what portion was subject to the payment of their debt, and failing to do so, the title to the whole stock was in K., and he might recover possession of them from the defendants.

This is a CIVIL ACTION, tried upon a case agreed before *Shipp, J.*, at Spring Term, 1888, of Wake Superior Court.

The parties agreed upon and submitted to the Court the following statement of facts :

"On and immediately prior to February 1st, 1887, the plaintiff was the owner of a stock of tailoring goods and tailors' utensils, and the furniture and fixtures of a merchant tailor's establishment, in the city of Raleigh ; the goods, &c., being then in a store-house until recently theretofore occupied by the firm of Kreth & Weikel.

That on February 1st, 1887, the plaintiff sold all of the goods, &c., to the defendant, A. Belsmeyer, and contemporaneously with such sale, Belsmeyer, to secure the purchase money, made and delivered the mortgage set forth below.

That the purchase money was to be paid in instalments according to the tenor and effect of the notes of Belsmeyer to plaintiff.

That at the time of the above sale Belsmeyer was a tailor by trade, and had no property other than that purchased as above from plaintiff, and owed other debts to other persons, and was insolvent. These debts were due to Henkelman, Jackson & Co., and to Focke & Sprenkle, and amounted to two or three hundred dollars and have been since paid. The plaintiff did not know of them when the mortgage was made to her.

That Belsmeyer took possession of the goods, &c., sold to him by plaintiff, and proceeded to manufacture the same into suits, and bought other goods from the defendants, Henkelman, Jackson & Co., and from other parties, and with all the goods thus purchased by him from the plaintiff and from Henkelman, Jackson & Co. and other parties, he car-

ried on the merchant tailoring business in the city of Raleigh for nearly twelve months, until the sale by him to Henkelman, Jackson & Co., as hereinafter stated. That he carried on this business with the goods thus obtained by him without any control or interference on the part of the plaintiff or any other person. That in this way he sold off, prior to the commencement of this action, a considerable amount of goods, including a large part of that purchased of plaintiff; that he paid plaintiff something over six hundred dollars from the proceeds of such sales, and used the residue of such proceeds in payment of other debts due and owing by him, and in his business and for his family and household expenses.

That between the 1st day of February, 1887, and 16th day of January, 1888, Belsmeyer became indebted to the defendants Henkelman, Jackson & Co., without the knowledge of plaintiff, for goods purchased of them as aforesaid, to be used in his business as a merchant tailor, in the sum of eight hundred and sixty-three dollars and __ cents, and being so indebted he made and delivered to said Henkelman, Jackson & Co., his other mortgage, to secure the said debt.

That immediately upon the execution of the other mortgage, defendants Henkelman, Jackson & Co. took possession of the goods described in the complaint which were conveyed to them, and held possession of the same, through their agent, the defendant J. A. Rogers, until the 17th day of January, 1888, when they were taken from their possession by the Sheriff of Wake County, under and by virtue of process caused to be issued by the plaintiff in this action, and were by the Sheriff delivered to plaintiff, by whom they have since been sold and disposed of.

That the goods described in the complaint consisted of some of those originally purchased by Belsmeyer from the plaintiff and some purchased by him from defendants Henkelman, Jackson & Co., and some purchased by him from

other persons, and were so intermingled as not to be separable or distinguishable at the time of the seizure by the Sheriff.

That the matters of fact stated in the said mortgages are admitted to be true, except as modified herein.

That plaintiff claims these goods in this action as mortgagee, and the indebtedness still due upon her mortgage is more than thirteen hundred dollars.

The defendants Henkelman, Jackson & Co. claim the goods as mortgagees, and the whole indebtedness secured by their mortgage is still due.

That the value of the goods described in the complaint is $1,250.

That both of the mortgages were duly proved and registered in the office of the Register of Deeds in and for the said County of Wake—the first on the 3d day of February 1887, and the second on the __ day of January, 1888.

It was agreed between the parties that if the Court should be of the opinion, upon the foregoing case agreed, that the plaintiff is the owner of and entitled to hold the goods and property, then judgment shall be entered that the plaintiff retain possession thereof and recover her costs. If, on the contrary, the Court should be of the opinion that the defendants Henkelman, Jackson & Co. were the owners of the goods and entitled to the possession thereof, then judgment should be entered in favor of Henkelman, Jackson & Co. for the sum of $863, less credit of $25, and interest on their counterclaim, and for their costs."

The defendants contended, that on the facts agreed the plaintiff had not rebutted the presumption of fraud, and that the mortgage to the plaintiff was fraudulent and void as to the defendants Henkelman. Jackson & Co., and that therefore the plaintiff could not recover. His Honor declined so to hold, but held that the mortgage was not fraudulent under these facts.

The defendants further contended, that there was no suffi-
cient description of the property conveyed in the mortgage,
and as after acquired property was so mixed with that on
hand when the mortgage was made as not to be distinguish-
able, that no property passed to the plaintiff, or at least that
only such property passed as was on hand when the mort-
gage was executed, and as this could not be separated that
the plaintiff was not entitled to recover in this action. His
Honor refused so to hold but ruled that all the goods on
hand when the plaintiff took possession under the proceed-
ings in this action were covered by the mortgage, and that
the plaintiff was entitled to recover them.

The following is a copy of the material portion of the
mortgage under which the plaintiff claims:

This deed, made, &c., witnesseth: That for and in consid-
eration of the sum of twenty-five hundred dollars, to said
August Belsmeyer in hand paid by said Mary C. D. Kreth,
the receipt whereof is hereby acknowledged, the said August
Belsmeyer hath bargained and sold and he doth hereby bar-
gain, sell and convey unto said Mary C. D. Kreth, her exec-
utors, administrators and assigns forever the following de-
scribed property, to-wit: All the stock of cloth, clothing,
tailors' trimmings, sewing machine, desk, stove and pipe,
tables, tailors' utensils, lamp, chairs and boxes in the store-
house on Fayetteville street, lately occupied by Kreth &
Weikel, being the property this day sold by said M. C. D.
Kreth to said Belsmeyer, and all property of like character
which the said Belsmeyer shall acquire for and in his busi-
ness as a merchant tailor, until the mortgage shall be sat-
isfied.

And he covenants with said M. C. D. Kreth to buy for cash
and to keep the stock of goods fully up to present value,
and not to remove such stock from said city.

To have and to hold the said property, &c.

The conditions of this deed are such that whereas the said August Belsmeyer and one Bernard Greenwood, of Wilson County, are justly indebted to said M. C. D. Kreth in the sum of twenty-five hundred dollars for the purchase money of said articles of property bought by said Belsmeyer, as evidenced by the thirteen single bonds of said A. Belsmeyer and B. Greenwood, bearing even tenor and date herewith, said bonds bearing interest from date at the rate of eight *per centum* per annum.

Now, therefore, if said bonds and interest thereon shall be promptly paid according to the tenor of the same, then this deed shall be null and void, otherwise to remain in full force and effect.

And if default shall be made in payment of any of said bonds when the same shall fall due, or shall commit a breach in either of his said covenants, then in either such event said Mary C. D. Kreth, her executors, administrators and assigns, are hereby fully authorized and empowered to take possession of and sell the above conveyed property at public outcry, at the court house in Raleigh, after advertisement for twenty days in some newspaper published in Raleigh, for cash, and out of the proceeds to deduct, first, the costs of advertisement and sale; second, the amount which shall then be due on said bonds, with interest accrued to day of sale; and if there should then remain any surplus, to pay the same over to the said A. Belsmeyer, his personal representatives or assigns. And in the event of a sale under this power, said M. C. D. Kreth, her executors, administrators and assigns, are fully empowered to execute all necessary deeds and instruments of conveyance to the purchaser or purchasers of said property.

It is further expressly understood and agreed between the parties hereto, that if default shall be made in the payment of either of said bonds, when the same shall be due, then all of said bonds shall immediately become due and payable,

whether due by their terms at the time of such default or
not, and the said Mary C. D. Kreth, her executors, adminis-
trators and assigns, shall be at liberty to exercise the power
of sale above given and conferred, notwithstanding the fact
that one or more of said bonds shall not at the time of said
default be due and demandable by their terms.

And said A. Belsmeyer further covenants that he will pay
all taxes that shall be assessed on said property while any of
the money secured by this mortgage shall remain unpaid, and
that he will keep the same insured in some insurance company
in good standing, having a resident agent in the county of
Wake, for the benefit of the mortgagee and her assigns, in a
sum not less that $2,500, as long as anything shall remain
due on the amount hereby secured. And if he fail to pay
said taxes and to effect and keep up said insurance, the mort-
gagee aforesaid shall be at liberty to pay said taxes and to
effect and maintain said insurance, and any sum or sums by
her or them so paid shall be added to the principal of the sum
then due on the first of said bonds thereafter to become due,
and draw interest accordingly.

In testimony whereof, &c.

" The Court, upon the facts set out in the case agreed, found
as a conclusion of law and fact that the mortgage made by
the defendant, A. Belsmeyer, to the plaintiff, dated February
21, 1887, was not made with the purpose and intent to delay,
hinder and defraud the creditors of said Belsmeyer, or such
person as should thereafter purchase from him. And upon
the above finding, and other facts in the case agreed, it is
considered ordered and adjudged that the plaintiff is the
owner of and entitled to hold the goods and property de-
scribed in the pleadings and in controversy in this action,
and that plaintiff retain possession thereof and recover of
the defendants her costs of this action." From this judg-
ment the defendants appealed.

*Mr. S. F. Mordecai*, for the plaintiff.
*Mr. John Devereux, Jr.*, for the defendants.

MERRIMON, J., (after stating the case). It was conceded on the argument that the deed of mortgage, under which the plaintiff claims title to the goods in controversy, was not upon its face fraudulent and void in law, but it was contended the facts recited in the deed, and other facts in evidence, raised the presumption of fact that it was fraudulent, and that such presumption had not been rebutted.

If it be granted that such presumption arose, we think there was evidence to rebut it. The deed itself supplied such evidence. The plaintiff sold a stock of goods to the mortgagor on a credit, taking his promissory notes, coming due successively at different times, for the purchase money, and to secure the payment of the same took the mortgage under which she claims. It is not pretended that this was done, nor is there the slightest evidence tending to prove that it was done in bad faith.

Such a transaction was in itself legitimate. The deed was not intended to secure debts antecedent to it in view of and involving an impending failure in business of the mortgagor; on the contrary, it contemplated that the mortgagor should go forward actively in a promising enterprise, and from the first fruits of it, in the course of a reasonable period. pay the purchase money. In this respect, the case is very different from that of *Cheatham* v. *Hawkins*, 76 N. C., 335, and other like cases relied upon by the defendants, in which the mortgagor owed and purported, by the mortgage, to secure debts antecedent to it, was insolvent and about to fail in his business enterprise, and in view of such fact executed a mortgage of his property, preferring some of his creditors, while he remained in possession of the goods, having control of the same, and devoting part of the proceeds thereof to his own use, and doing other acts suggestive of a bad and fraudulent

purpose. The prudential and cautionary provisions and stipulations in the mortgage under consideration, in respect to the business to be conducted, the requirement that the purchases of replenishing goods should be for cash down, the payment within a few months of more than six hundred dollars of the debt secured by the mortgage—these and like facts and circumstances appearing from the deed and the case agreed, certainly made evidence tending strongly to rebut any presumption of fraud arising from the mere fact that it was intended that the mortgagor should have possession of and sell the goods, and that in violation of his agreement bought other goods on a credit and intermingled them with a part of the goods he so purchased from the plaintiff.

The parties agreed that the Court should find the facts and apply the law of the case, and accordingly it found that there was no fraud in fact in the mortgage and transaction in question. As there was evidence to warrant such finding, it must be treated as conclusive. And as the mortgage was unaffected by fraud, it must be allowed to have just legal effect.

Then, unquestionably, the plaintiff was entitled to have possession of and to apply such of the goods in controversy as she so sold to the mortgagor. But it is insisted that these goods have been so intermingled with the like goods the mortgagor purchased from the defendant, that they cannot be ascertained. And it is further contended, that the title to the goods purchased by the mortgagor from the defendant did not pass to the plaintiff because, first, the mortgage in her favor did not embrace them ; and, secondly, if it did, then, as to these goods, the mortgage was not registered as required by the statute.

Granting that there might be force in this last contention, we think that the plaintiff should not suffer prejudice by such intermingling of the goods. She was in no just sense to be blamed on that account. She did not direct or procure it to be done; on the contrary, she required the mort-

gagor to covenant in the deed that he would purchase re-
plenishing goods for cash down, and thus prevent occasion
for such prejudice to any person.

The mortgage was duly registered, and the defendants
therefore had notice of it and its provisions, and of the nature
and circumstances of the mortgagor's business, and the rights
of the plaintiff in respect thereto. It was their duty to them-
selves to be cautious in their dealings with him. Neverthe-
less, they sold him goods on a credit with the knowledge—
it is fair to so infer—that he would probably intermingle
them with the goods of the plaintiff as mortgagee. It was
their laches, their misfortune, thus to deal with such a mort-
gagor, and thus place their goods beyond recognition and
identification.

In such a case one party or the other must suffer preju-
dice. Which shall it be? Surely not that one to whom no
blame attaches. As surely that one so chargeable with
laches. The case states that part of the goods in contro-
versy belonged to the plaintiff, but these could not be dis-
tinguished from the goods sold to the mortgagor by the
defendants and others. But, as we have seen, that was not
the plaintiff's fault. She was entitled to have her goods,
and when it was admitted on the trial that a part of the
goods in question, under the circumstances, were hers, then
the burden was on the defendants, chargeable with laches, to
distinguish and prove such of the goods as belonged to them,
because the mortgagor wrongfully purchased like goods
from the defendants on a credit, to be placed with the plain-
tiff's goods, and this the defendants knew, and they knew
also that the mortgagor would probably intermingle their
goods with the plaintiff's, and impliedly they gave their
consent that he might do so. The goods thus undistinguish-
able became the property of the plaintiff, as mortgagee.
*Queen* v. *Wernwag,* 97 N. C., 383, and the authorities there
cited.                                        Judgment affirmed.