## MESSICK v. FRIES.

(Filed June 4, 1901.)

FRAUDULENT CONVEYANCES—*Mortgages—Subsequent Creditors —Prior Mortgagees—Evidence—Fraud.*

The facts in this case are insufficient to be submitted to the jury on the question as to whether a mortgage was fraudulent as to subsequent creditors.

ACTION by A. F. Messick and others against H. W. Fries and H. A. Giersh, heard by Judge *E. W. Timberlake,* at November Term, 1900, of the Superior Court of FORSYTH County. From a judgment of nonsuit, the plaintiffs appealed.

*Jones & Patterson, Swink & Swink,* and *D. H. Blair,* for the plaintiffs.

*Watson, Buxton & Watson,* for the defendants.

MONTGOMERY, J.    The defendant Giersh in 1892 was indebted to the other defendant Fries in the sum of about $14,000, evidenced by three promissory notes, two of which were executed in 1887, and the other in the sum of $8,600, the consideration of the last-mentioned one being the purchase-money agreed to be paid to Fries for the interest of Fries in the stock of goods and merchandise belonging to a partnership of which the defendants were members, the purchase having been made on the day of the execution of the note for the purchase-money, the 15th of July, 1892.    To secure all three of the notes, Giersh executed a mortgage to Fries on the 15th of July, 1892, on the entire stock of goods, his own interest and that purchased by him from Fries, in the Fries storehouse in Salem, and all book accounts, notes and other evi-

dences of debt due to the late firm of Fries, Giersh & Sense-
man.    It was stipulated in the mortgage that monthly pay-
ments were to be made by Giersh to Fries on the indebtedness,
and a calculation shows that several years would have elapsed
before the indebtedness could have been paid if the payments
agreed upon should be promptly met.    There was a further
provision in the mortgage by which the possession of the
goods was to be left in Giersh, it being contemplated that
Giersh was to continue the business in his own name and for
his own account.    The following is the language of the mort-
gage on that point: "This mortgage is also to cover all goods
hereafter bought to keep up the stock, and such goods when
bought are to be substituted for their sales as long as any-
thing remains due to H. W. Fries and secured by this mort-
gage."

The plaintiffs are judgment creditors of Giersh, the indebt-
edness, however, having arisen since the execution of the
mortgage and the consideration of which being for goods and
merchandise sold to Giersh to replenish and keep up his
stock, and they have brought this action to have the mortgage
declared fraudulent and void.    If the plaintiffs had been
creditors of Giersh at the time of the execution of the mort-
gage, a strong presumption would have been raised as to
its fraudulency; and if the deed had shown on its face
that there were other creditors of Giersh, and that all of his
property was embraced, the fraudulent intent would be irre-
buttable—the deed would be void on its face.    *Cheatham v.
Hawkins,* 76 N. C., 335.    The decision in the last-mentioned
case is greatly shaken, if not overruled, by the case of
*Kreth v. Rogers,* 101 N. C., 263, but it is not necessary to the
decision of the present case to undertake a reconciliation be-
tween those two cases, for they concerned existing creditors,
while in the matter now before us the creditors are subse-
quent ones to the execution of the mortgage.    We find incon-
sistencies on the same subject in the opinions of the Supreme

Court of the United States.   In *Robinson v. Elliott,* 89 U. S.,
758, in reference to existing creditors, it was decided (1874)
that a mortgage of a stock of goods to two of several creditors,
in which the possession of the goods was left with the mort-
gagor to sell and supply the place of those goods sold with
other goods purchased, the substituted goods to be subject to
the lien of the mortgage, was void on its face and was so de-
clared by the Court, and that, notwithstanding the mortgage
had been duly registered.   On the last point the Court said:
"Manifestly it was executed to enable the mortgagors to con-
tinue their business and appear to the world as the absolute
owners of the goods and enjoying all the advantages resulting
therefrom.   It is idle to say that a resort to the record would
have shown the existence of the mortgage, for men get credit
by what they apparently own and possess, and this ownership
and possession had existed without interruption for ten years.
There was nothing to put creditors on their guard."   In the
later cases in the same Court, of *Peoples Saving Bank v.
Bates,* 120 U. S., 556, and *Etheridge v. Sperry,* 139 U. S.,
266, the doctrine held in *Robinson v. Elliott, supra,* is over-
ruled, though not expressly so.   In the last-mentioned case,
the mortgagor was left in possession of the stock of goods
with a verbal agreement that he might use the proceeds of his
daily sales for the support of himself and to keep up the stock,
the whole of the surplus to be applied to the payment of the
debt; and the Court held that the matter of alleged fraud in
the execution of the mortgage was a matter of fact and not
one of law.   The Court said: "Why should a transaction
like this be condemned, if made in good faith and to secure
an honest debt?   The owner of a stock of goods may make
an absolute sale of them to his creditor in payment of a debt.
If an absolute sale, why not a conditional sale with such con-
ditions as he and his creditor agree upon?   As between the
parties, no Court would question this right or refuse to en-

force the conditions. The interest of the general public is not prejudiced by any such transaction between debtor and creditor. Indeed, they are rather promoted by any arrangement by which the mortgagor can continue in business, for in ninety-nine cases out of a hundred the taking of possession by a creditor results in closing the business and turning the debtor out of employment. The only parties who can claim to be injuriously affected are unsecured creditors. But they are notified by the record of the exact relations between the mortgagor and mortgagee; and surely subsequent creditors have no right to complain, if they deal with the mortgagor with full knowledge of such relations. Existing creditors may, of course, challenge the good faith of the transaction, but if they can not disturb an absolute sale when made in good faith, why should they be permitted to challenge a conditional sale, if made in good faith? The fact that fraudulent relations are possible is hardly a sufficient reason for denouncing transactions which are not fraudulent."

But the plaintiffs were not creditors of Giersh at the time of the execution of the mortgage, their debts having been contracted by Giersh since its execution. Is the mortgage presumptively fraudulent as to subsequent creditors, the plaintiffs? The same rules can not apply to the rights of these two classes of creditors. The character of the evidence must vary, and so must the measure of relief. In voluntary conveyances, where subsequent creditors are concerned, the touchstone of fraud is the intent with which they are made; and that is not a matter of law, but is to be passed upon by the jury. *Clement v. Cozart,* 109 N. C., 173; *Cook v. Johnson,* 12 N. J., Eq., 54; 72 Am. Dec., 381; *Payne v. Stanton,* 59 Mo., 159; Wait on Fraudulent Conveyances, 201.

It was decided in *Etheridge v. Sperry, supra,* that in case of a mortgage to secure a debt, an instrument that can not be called a voluntary conveyance, subsequent creditors have

MESSICK *v.* FRIES.

no right to complain if they deal with a mortgagor with full knowledge (by constructive knowledge from registration of mortgage) of such facts as were set out in the mortgage. Inclining to the correctness of the view of the Court in that case, nevertheless, if the mortgage in the present case be treated, for the sake of argument, as a voluntary conveyance (which it is not), the question of fraud would be a question of fact and not of law. There was no evidence in this case that there was any fraud in the execution of the mortgage at or before the time of its execution. But the subsequent acts of the parties may be submitted to the jury, as they "may reflect light back upon the original intent," and help to characterize and discern it more correctly. Wait on Fraudulent Conveyances, *supra.* Fraud must be proved to be in the inception of the matter, but the after-conduct of the parties is evidence going to explain the motives which controlled the actions in the beginning, and give point to the original purpose.

Upon a most careful review of the evidence, we find none that ought to have been submitted to the jury to show fraud in the transaction. The debts secured were admitted to be *bona fide;* no attempt was made to keep secret the mortgage; it was on the registration books. The debt of $8,600 had been paid; no act of the mortgagor or mortgagee was brought out in the evidence in the least calculated to show a fraudulent purpose in the execution of the mortgage. That the bank of which the mortgagee was a director tried to help the debtor in his financial difficulties is not evidence of fraud. They misled no creditor. No misapplication of the proceeds of sale with the consent and knowledge of the mortgagee was shown; neither was there any evidence that the mortgagor was using the profits of the business for his own ease and advantage in fraud of his creditors, and with the knowledge of the mortgagee.

The other exceptions of the plaintiff are without merit and do not justify a discussion.

His Honor was right in holding that there was no fit evidence to be submitted to the jury to prove fraud, and he properly dismissed the action upon the motion to nonsuit the plaintiffs.

No error.