EDWIN G. CHEATHAM v. WILLIAM J. HAWKINS and others.

### *Mortgage of Merchandise—Fraud.*

1. A mortgage on a stock of goods which contains a provision that the mortgagor is to remain in possession for at least nine months, and a further stipulation that "in case of removal or attempt to remove the same (the goods) from the town of H. and an unreasonable depreciation in value, *or if from any other cause the security should become inadequate,*" the mortgagee may take possession, affords the most cogent intrinsic evidence of fraud.

2. The presumption of fraud thus arising is almost irresistibly strengthened by evidence *aliunde* that the mortgagor was insolvent at the time of the conveyance, and all his other property under mortgage, and that afterwards he continued in possession, made additions to the stock, and applied the proceeds of his sales to his family and personal expenses and the payment of his other debts.

3. If the law adjudges the effect of a transaction to be to delay, hinder, or defraud creditors, it is to be regarded as fraudulent, although this may not have been the actual intention of the parties.

(*Cheatham* v. *Hawkins,* 76 N. C., 335; *Holmes* v. *Marshall,* 78 N. C., 262, cited and approved.)

CIVIL ACTION tried at Spring Term, 1876, of GRANVILLE Superior Court, before *Seymour, J.*

The statement in same case, 76 N. C., 335, and the facts set out by THE CHIEF JUSTICE in delivering the opinion of this court are deemed sufficient to an understanding of the points decided. Judgment for plaintiff, appeal by defendants.

*Mr. W. H. Young,* for plaintiff.
*Messrs. Merrimon, Fuller & Ashe* and *Batchelor,* for defendants.

SMITH, C. J. When this case was before the court upon the former appeal, 76 N. C., 335, BYNUM, J., delivering the opinion of the court, thus comments on the mortgage deed:

" To secure a debt the bargainor conveys in mortgage an entire stock of miscellaneous merchandise and at the same time in the deed reserves the possession of them for at least nine months. The implication is irresistible, from the very nature of the business, that he was to continue in selling and trading as before, otherwise why retain possession of goods which would be a dead encumbrance on his hands without the power of disposition? There is no provision for his accounting for the proceeds of sale. He could apply the money in payment of debts other than the mortgage debt, he could apply it to family expenses, or even to the purposes of pleasure or waste. Substantially the proceeds belonged to him until the maturity of the Hawkins debt, to be expended as he pleased, and in the meantime the entire stock of goods was to be secure from the reach of his creditors. This case is unlike and stronger than the cases of *Young* v. *Booe,* 11 Ire., 347 ; *Hardy* v. *Skinner,* 9 Ire., 191 ; *Gilmer* v. *Earnhardt,* 1 Jones, 559 ; *Lee* v. *Flannagan,* 7 Ire., 471, and that class of cases."

It may be added to what is so forcibly said by the court that the intention that Harris in retaining possession might use and dispose of the goods, after the making the mortgage as before, seems to be implied if not directly sanctioned by the following clause inserted in it: "But in case of removal or attempt to remove the same (the goods) from the town of Henderson, and an unreasonable depreciation in value, or if *from any other cause the security shall become inadequate,* the said Hawkins & Co. may take the said property or any part thereof into their own possession." For, it may be asked, how otherwise than by the means specified or by a reduction of the stock itself could the security be rendered precarious, until which time or until the note matured Harris was to remain in undisturbed possession of the goods.

The court in the former opinion also declared " that the mortgage affords the strongest possible example of pre-

sumptive fraud, and one which can scarcely be rebutted by any existing facts outside of the deed."

The case is now before us with the evidence offered on the one side to rebut, and on the other to strengthen and sustain the presumption. The judge who tried the cause and by consent of parties passed upon the facts held that it was not rebutted. We will examine the proof of the "facts outside of the deed" and see what is its force and effect.

When Harris executed his mortgage he was in hopeless insolvency, all of his other property also under mortgage, and his debts estimated to amount to fifteen thousand dollars. He continued in the same manner after as before his conveyance to the defendants to sell and dispose of the goods, furnishing his own family therefrom, and appropriating the fund to the improvement of his land and to the payment of other debts. During the time he bought and made fresh additions to the stock, which were intermingled with the goods on hand, and sold indiscriminately with them. The defendant's agent, Andrews, who negotiated the sale of the bacon and took the mortgage from Harris, testified that he expected when the transfer took place that Harris would go on as before.

The rebutting testimony proceeds from the mortgagor, the agent, and the acting member of the mortgagee firm, each of whom swears that in making and accepting the deed, he did not intend thereby to hinder, delay or defraud other creditors of Harris, or to secure any benefit to him or his family. The only rebutting evidence adduced against the fraudulent purpose inferred from the provisions of the deed itself and their obvious and necessary effect upon the rights of creditors, is found in the declaration of the several parties to the transaction, that an intent to favor the mortgagor, or to delay or defraud his creditors, was not in their minds at the time. This cannot be allowed to remove the legal presumption arising from the facts. Acts fraudulent

in view of the law because of their necessary tendency to delay or obstruct the creditor in pursuit of his legal remedy, do not cease to be such because the fraud as an independent fact was not then in mind. If a person does and intends to do that which from its consequences the law pronounces fraudulent, he is held to intend the fraud inseparable from the act. To lease a stock of goods after they have been conveyed by mortgage in the debtor's possession and subject to his exclusive control and disposition as if they were his own while they are at the same time placed beyond the reach of execution, is itself a fraud; because it does secure ease and exemption to the debtor and obstructs the creditor's remedial process for the enforcement of his debt against the property. As this effect follows from the form of the mortgage and the uses to which the property conveyed by it could be and has been put, it must be considered as within the contemplation of the parties to the mortgage, and cannot be met and removed by their misapprehension of what constitutes fraud, and declaration that none was intended. There are conveyances, regular and fair upon their face, yet rendered fraudulent and void because of the intent accompanying their execution and the unlawful purposes they are made to subserve. The taint is communicated by the accompanying illegal intent. Our attention has been called, in the carefully prepared and forcible argument of the plaintiff's counsel, to many cases in this and other states where the same question has been discussed and decided, to some few of which only will we refer.

In *Collins* v. *Myers*, 16 Ohio, 547, a stock of goods was conveyed by mortgage of which the mortgagor was to remain in possession. The court say : " to hold that such a mortgage was valid, would furnish a complete shelter under which a man could carry on trade for his own benefit completely protected against the payment of his debts and placed wholly beyond the reach of creditors." In *Griswold* v. *Shel-*

*don,* 4 Coms., (N. Y.) 581, BRONSON, C. J., says : " There would be no hope of maintaining honesty and fair dealing if the courts should allow a mortgagee or vendee to succeed to a claim to personal property against creditors and purchasers after he had not only left the property in the possession of the debtor, but had allowed him to deal with and dispose of it as his own."

In *Tennessee Nat. Bank* v. *Elbert,* 9 Heisk., (Tenn.) 154, a very similar conveyance of groceries was made, and the court say : " Admitting that there was no specific intent to defraud any particular creditor, or no actual fraud in fact, yet here are such facilities for fraud contracted for on the face of the deed, that it must be held as wanting in legal good faith on the plain principle that every reasonable man is presumed to intend the probable consequences of his own acts. And besides, there is clearly a benefit contracted for to the grantors on the face of the deed and a prejudice to the rights of other creditors."

In *Babcock* v. *Eckler,* 24 N. Y., 623, this strong and forcible language is used by one of the judges : " If the necessary consequence of a conceded transaction was a defrauding of another, then as a party must be presumed to have foreseen and intended the necessary consequence of his own act, the transaction itself is conclusive evidence of a fraudulent intent; for a party cannot be permitted to say that he did not intend the necessary consequence of his own voluntary act. Intent or intention is an emotion or operation of the mind, and can usually be shown by acts or declarations, and as acts speak louder than words, if a party does an act which must defraud another is weighed down by the evidences of his own act."

We may add to the numerous cases cited in the opinion of BYNUM, J., the opinion of the same judge in the more recent case of *Holmes* v. *Marshall,* 78 N. C., 262, in its main features very similar to this before us, wherein he says :

" The presumption of fraud here is not affected by the ignorance of the plaintiff of the insolvency of the trustors at the the time of the execution of the deed; but the presumption is raised by the *fact* of their insolvency, and the further fact that the plaintiff is a party to a deed of trust which secures a benefit to the makers and which conflicts with the right of creditors."

If the motive to be ascertained, not from the act itself and its results but from the subsequent declarations of the parties to the transaction, is to be the test of the validity of conveyances, they would depend not upon the clear and well settled principles of law but upon the capricious and uncertain temper of individual persons. Hence the reasonableness and utility of the rule which has been established.

The surrounding facts of this case and the uses made of the goods, the possibility of which brought the mortgage to the very verge of condemnation, as fraudulent upon its face, but strengthen instead of impairing the force of the presumption which it is said to be almost impossible successfully to repel.

We see no error in the ruling of the court, and the judgment must be affirmed.

No error.                                        Affirmed.