A. J. BYNUM v. J. F. MILLER & CO.

*Fraudulent Assignment—Subsequent Purchaser.*

A subsequent purchaser of personal property from one who has previously made a fraudulent assignment of it—or an assignment without consideration and for his own benefit, whether the purchase be with or without notice and for a valuable consideration, and such assignment has been registered, succeeds only to the rights of his assignor; *Therefore*, where the plaintiff and A were partners in trade, and upon dissolution the plaintiff sold his interest to A and took a mortgage on the goods to secure the price and also the debts of the firm; A remained in business for a while and then sold and conveyed the stock of goods to the defendant for a small sum in money, and his own individual note in a considerable amount which he owed when the said mortgage was executed; *Held* in an action by plaintiff for the goods, that the mortgage is sufficient in law to pass title as against the vendor and the defendant who claims under him, and that neither can impeach the same for fraud in its inception.

(*Garrison* v. *Brice*, 3 Jones, 85 ; *Long* v. *Wright, Ib.*, 290 ; *Hiatt* v. *Wade*, 8 Ired., 340 ; *Plummer* v. *Worley*, 13 Ired., 423 ; *Barwick* v. *Wood*, 3 Jones, 306 ; *Green* v. *Kornegay*, 4 Jones. 66 ; *Williford* v. *Conner*, 1 Dev , 379 ; *Dukes* v. *Jones*, 6 Jones, 14, cited, commented on and approved.)

CIVIL ACTION tried at Fall Term, 1881, of CLEAVELAND Superior Court, before *Avery, J.*

The plaintiff appealed.

*Messrs. Hoke & Hoke* and *Battle & Mordecai*, for plaintiff. *Mr. D. Schenck*, for defendants.

SMITH, C. J. The plaintiff and W. H. Miller, as partners engaged in trade under the firm name of Bynum & Miller, and owning a stock of goods entered into a mutual agreement in dissolving their association, under which the former sold and assigned his individual share in the stock of goods then in possession to the latter, and the said W. H. Miller, by his deed of mortgage dated on April 20th, 1878, reconveyed the said goods, with such others as he might thereafter purchase and add, to the plaintiff in trust to secure the payment of a debt therein recited to be due to the plaintiff in the sum of $300, payable on the first day of November following, and containing a power of sale in default of payment. This was followed a week later by a second mortgage of the interest of said Miller in the same goods and future accessions thereto, in the way of replenishing the stock, with condition to be void if the said Miller should pay off and discharge the indebtedness of the partnership on or before the said first day of November in full exoneration of the plaintiff, and in case of failure to do so, vesting in him, as mortgagee, authority to make sale of the goods and apply the proceeds to the discharge of the firm liabilities and his own relief. These deeds were proved in November, and registered on December 6th of the same

year, having been withheld until that time under an arrangement agreed on between the parties when they were executed, that they should not be registered unless the mortgagor "should be pressed" or become embarrassed, of which he was to give the plaintiff information, and that meanwhile Miller should retain and continue to dispose of the goods, as if they were his own.

On the 10th day of April, 1879, Miller executed a deed to the defendants for the entire stock of goods then on hand, of the estimated value of $2,700 and of which the additions thereto since the date of the mortgages constitute the principal part, for the recited consideration of $116 in money, and the surrender to Miller of his individual notes in the sum of $2,000 due and owing when the mortgages were made, and of debts in a like amount since contracted.

The defendants took and claim the goods under this assignment, and refuse to surrender them or any portion of them to the plaintiff.

It was in evidence that the indebtedness of Bynum & Miller, at the termination of the partnership, was about $2,300, which has since been paid off, the plaintiff having paid over $700 of the amount, and that the goods then on hand were more than sufficient for its discharge, besides firm assets in notes and accounts uncollected.

These issues were submitted to the jury:

1. Is the plaintiff owner of the property for which the suit is brought?

2. Did the defendants, J. F. Miller & Co., purchase the goods for value and without notice of the assignment?

3. Was the sale and conveyance to the defendants made with intent to hinder, delay or defraud the creditors of the assignor?

The plaintiff asked instructions to be given to the jury to this effect:

1. The deeds to the plaintiff are sufficient in law to pass

36

title to the goods as against Miller, the mortgagor, and against the defendants who claim under him, and can be impeached by neither.

2. To give effect to the assignment to the defendants, they must have bought the goods for a valuable consideration and without notice of the prior incumbrances, and the registration thereof was constructive notice of them.

3. If the conveyance to the defendants was with a fraudulent intent, it would be void as to the creditors of Miller and the plaintiff.

4. If the fraudulent purpose of Miller was known to the defendants, or they had information of such facts as reasonably authorized the inference that he entertained such purpose, in either case they would be participants in the fraud and could not defend against the plaintiff's title.

In the view we have taken of this appeal, it is necessary only to consider a single exception—the refusal of the judge to give the first instruction which would have been decisive of the right of recovery, and left only the damages to be assessed. In our opinion the exception is well taken and the jury should have been so charged.

Whatever diversity of views may exist elsewhere, the law is well settled by adjudications in this state, that a subsequent purchaser of personal property from one who has previously made a fraudulent assignment of it, or an assignment without consideration and for his own benefit, whether the purchase be with or without notice and for a valuable consideration, and such assignment has been proved and registered as required by law, stands in the place of his assignor, and neither is permitted to impeach its force and validity. The estoppel upon the assignor extends to his subsequent vendee, and as to both, the conveyance, though it may be void as to creditors, is equally efficacious as to them.

We are content to recall some of the cases in which the proposition is stated and maintained:

In *Garrison* v. *Brice*, 3 Jones, 85, PEARSON, J., thus declares the law: "The statute of 13th Eliz. avoids voluntary conveyances of personal property, as well as land, as against creditors. But the 27th Eliz. avoids conveyances of *land* only, as against subsequent purchasers. So although the defendant is a purchaser for a full and valuable consideration, yet the deed previously executed by his vendor to the plaintiff although voluntary and in trust for his wife and children, vested the title in the plaintiff and was valid, not only as against the husband, but as against the defendant who is a subsequent purchaser." He distinguishes the case from that of *Hiatt* v. *Wade*, 8 Ired., 340, cited in support of the opposite opinion, in that, " grass was the subject of the conveyance, growing in the meadow," and treated as part of the land.

So again the same eminent jurist says in another case—*Long* v. *Wright*, 3 Jones, 290 : " The position that a conveyance of slaves made with an intent to hinder, delay and defraud creditors is void against a subsequent purchaser who bought in good faith and paid therefor a fair price, is not supported by any statutory provision or by any principle of the common law." This statement of the law, he defends upon an examination of the authorities, and referring to a suggestion of Chief Justice RUFFIN in *Plummer* v. *Worley*, 13 Ired., 423, that the statute of 27th Eliz. is but an affirmation of the common law, proceeds: "The remedy given to subsequent creditors rests upon the enactment of the statute * * * * and that in the absence of a statutory provision making it void against a subsequent purchaser, the legal effect of the deed (conveying slaves) was to take the title out of the debtor and vest it in the plaintiff's intestate, *notwithstanding a fraudulent intent in regard to creditors* and the trust intended for the debtor."

In *Barwick* v. *Wood*, 3 Jones, 306, the same judge deliver-
ing the opinion uses this language: " It is settled that 27th
Eliz., (Rev. Code, ch. 50, § 2,) which protects subsequent pur-
chasers does not embrace *personal property*, and the common
law only protected against fraud, rights which existed at
the time of the fraudulent conveyance, citing and approv-
ing *Long* v. *Wright.*

Again in *Green* v. *Kornegay*, 4 Jones, 66, BATTLE, J., ex-
presses the opinion of the court and reaffirms the doctrine:
" The recent case of *Long* v. *Wright*, 3 Jones, 290, shows that
the defendant, as the *subsequent purchaser of a personal chattel*,
*could not set aside the prior conveyance to the plaintiff's intestate.*
The case of *Williford* v. *Conner*, 1 Dev., 379, is equally in
point to show that *as a creditor*, the defendant could take
advantage of the deed to the intestate, being *voluntary* and
*fraudulent*, only by reducing his debt to judgment and seiz-
ing the property under execution," or, it may be added, by
a direct proceeding in equity to have the fraud declared
and the property subjected to his demand.

The only case that seems to look in a contrary direction,
which we recall, is that of *Dukes* v. *Jones*, 6 Jones, 14, in
which it is held that a bill of sale absolute in terms, but in-
tended to operate as a mortgage or security only, was void
against a subsequent *bona fide* purchaser under the regis-
tration law, for the reason that such instruments are ef-
fectual only when registered, and from the day of registra-
tion, against creditors and purchasers for a valuable consid-
eration; and this bill of sale in the language of the Chief
Justice " was put in such a shape that it could not be regis-
tered, for the registration of a deed, absolute on its face,
cannot be the registration of a mortgage, so that a deed
which does not set out on its face the true nature of the
transaction, is not susceptible of registration." Of the want
of registration, purchasers as well as creditors who are put
on the same footing, can alike take advantage. If the mort-

BYNUM *v.* MILLER.

gage deed is upon its face fraudulent, and so to be adjudged in law upon an inspection of its provisions, as contended for the defendant, the registration is of an instrument complete in form and what it was intended to be, and the requirements of the statute are fully met; and if the infectious fraud is in the use to be made of it in keeping off creditors and securing the benefits to the debtor, under an agreement preceding or attending the making of the conveyance, the case falls directly within the principle established in the adjudications to which we have referred, and from which we have largely quoted. When His Honor stated to counsel for the plaintiff that the jury would be instructed that the plaintiff's mortgage deeds were in law presumed to be fraudulent and the burden rested on him to rebut the presumption in order to sustain his title to any portion of the goods, in deference to which a non-suit was submitted to, he committed an error in law in applying the principle to the facts of the case and placing the defendants in the same favorable position as if they were creditors and were enforcing their demands, as such, in a due course of law.

We do not undertake to say what shall be the extent of the recovery, nor to pass upon any of the other exceptions. We simply decide that these vendees cannot impeach the mortgages by evidence of fraud in their inception, and in this respect succeed only to the rights of their vendor.

For the error pointed out there must be a new trial, and it is so adjudged.

Error.                              *Venire de novo.*