A. BLANTON GROCERY COMPANY v. J. W. TAYLOR ET AL.

(Filed 22 May, 1913.)

1. Mortgages—Stock of Goods—Debtor and Creditor—Fraud—Presumptions.

A mortgage upon a stock of goods, the possession of which is left with the mortgagor, to secure a debt maturing in the future, which contains no provision for an account of sales and the application of the proceeds to the debt, is presumptively fraudulent as to existing creditors.

2. Same—Rebuttal Evidence—Intent.

Where there is a presumption of fraud as to existing creditors arising from a mortgage of a stock of goods, it cannot be rebutted by proving the absence of an actual intent to defraud, the motive being immaterial.

3. Mortgages—Stock of Goods—Debtor and Creditor—Fraud—Rebuttal Evidence—Property Sufficient.

The presumption of fraud as to existing creditors in a mortgage of a stock of goods may be rebutted by proving that there was no other creditor of the mortgagor at the time of the registration of the mortgage, or if there was such creditor, that the mortgagor owned other property at that time, which could be subjected to the payment of the debt, sufficient to pay such creditor.

4. Mortgages—Debtor and Creditor—Fraud—Registration — Subsequent Creditors.

In the absence of actual or presumptive fraud, a mortgage on a stock of goods is valid as to debts contracted subsequent to its registration.

5. Mortgages—Stock of Goods—Fraud—Instructions Inconsistent—Appeal and Error.

The plaintiff, a mortgagee of a stock of goods, brings his action against the mortgagor and his assignee for the benefit of his creditors and takes the goods under claim and delivery. The character of the transaction of the mortgage was such as to raise an issue of fraud as to the other creditors of the mortgagor. A charge held to be inconsistent and for reversible error, which instructed the jury, one part thereof, that the issue was to be determined by the greater weight of the evidence, and in another part, without correcting this error, that the evidence must be clear, strong, and convincing.

APPEAL by defendant from *Ferguson, J.,* at December Special Term, 1912, of RUTHERFORD.

This is an action to recover a stock of goods, the plaintiffs claiming ownership under a chattel mortgage executed by the defendant J. W. Taylor, on 25 January, 1910, to secure a note of $100 due 3 March, 1910, in the form prescribed by section 1039 of the Revisal.

The defendants are J. W. Taylor and J. C. Hampton, the latter claiming under a general assignment to secure creditors, executed to him by the said Taylor.

The plaintiffs alleged, among other things, "if as a matter of law the said mortgage does not cover all goods, without regard from whom purchased, subsequently added, up to the time of the satisfaction of the mortgage, then the same was incorrectly drawn by reason of a mutual mistake of both parties to said mortgage."

The defendants denied this allegation, and also that there was anything due the plaintiffs, and the defendant Hampton further alleged: "That the chattel mortgage described in the complaint was fraudulent, as well as void, as to the creditors of J. W. Taylor, because it pretended to mortgage the stock of merchandise of the defendant J. W. Taylor, and allowed said defendant J. W. Taylor to sell the same without making provision for the application of the proceeds of sale of said stock of goods, and because the description in said chattel mortgage is not sufficient in law."

The stock of goods was seized under proceedings in claim and delivery, issued in the action, and delivered to the plaintiffs, and sold by them under their mortgage, at which sale the goods were bought for the plaintiffs for $450.

The defendants tendered the following issue, among others:

"2d. If so, was the mortgage fraudulent and void as against other creditors of the defendant J. W. Taylor?"

The court refused to submit the issue, and the defendants excepted.

Prior to the trial, the plaintiffs made a tender of judgment under section 860 of the Revisal, for $395, with interest from 24 March, 1911, and costs. The court permitted this tender to be offered in evidence, and the defendants excepted.

There was evidence on the part of the plaintiffs that the goods were not worth more than $450, but it was admitted that after the sale they sold them for $475, and there was evidence for the defendants that the goods were worth $800.

The verdict of the jury was as follows:

1. In what amount, if any, is J. W. Taylor indebted to plaintiffs? Answer: $78.29.

2. Was there a mutual mistake in drawing the chattel mortgage, by which the provision that the mortgage should cover all the merchandise subsequently added to the stock omitted, as alleged? Answer: Yes.

3. What was the value of the property taken by the plaintiffs at the time of the seizure? Answer: $462.50.

His Honor charged the jury on the second issue: "The plaintiff contends that the parties agreed between themselves—that is, Taylor and Laughridge—that the mortgage should be so amended as to express that all goods which might be in stock or hereafter bought (did not make any difference from whom the purchases were made), and that having agreed upon that, with the understanding to put it in the mortgage, it was a mistake made by both Laughridge and Taylor in getting the expression necessary to convey the idea that the mortgage should be on goods which might hereafter be bought, not only from the Blanton Grocery Company, but from any other parties from whom he purchased. The burden is on the plaintiff to satisfy you by the greater weight of the evidence that such agreement was made and left out by mistake. In other words, that both parties understood what it was, and intended it should be so embraced by the mortgage, but in failure to use proper words to convey their meaning as agreed upon, it was left out. They are not to satisfy you beyond a reasonable doubt, as in criminal cases, but by the greater weight of the evidence." Defendants excepted.

And again: "When you come to the second issue, you will remember it is a rule of law that when people reduce their contracts to writing, that the writing is presumed to express what they agreed upon, and the party who insists that something is left out of the writing which was agreed upon, by mutual mis-

take, is called upon to give to the court and jury a class of evidence which is clear within itself, and strong and convincing."

Judgment was entered upon the verdict, and the defendant excepted and appealed.

*Quinn, Hamrick & McRorie and J. W. Pless for plaintiff.*
*S. Gallert and McBrayer & McBrayer for defendant.*

ALLEN, J. The issue of fraud is raised by the pleadings, and if there was any evidence justifying an answer thereto favorable to the defendants, it was error to refuse to submit it.

If we were dealing with any other class of property than a stock of goods, or if it was necessary in this case to prove a corrupt and fraudulent intent, we would hold there was no such evidence, as there is nothing in the evidence suggesting that the plaintiffs had any unlawful or wrong purpose, but the character of the property and the admitted facts are such that there arose a presumption of a legal fraud, which the plaintiffs were required to rebut.

In *Cheatham v. Hawkins,* 76 N. C., 335, the Court says, in commenting upon a mortgage of a stock of goods: "To secure a debt, the bargainor conveys in mortgage an entire stock of miscellaneous merchandise, and at the same time, in the deed, expressly reserves the possession of them for at least nine months. The implication is irresistible, from the very nature of the business, that he was to continue in selling and trading as before; otherwise, why retain possession of goods, which would be a dead encumbrance upon his hands without the power of disposition? There is no provision for his accounting for the proceeds of sale. He could apply the money in payment of debts, other than the mortgage debt; he could apply it to family expenses, or even to the purposes of pleasure or waste. Substantially, the proceeds belonged to him until the maturity of the Hawkins debt, to be expended as he pleased; and in the meantime the entire stock of goods was to be secure from the reach of his creditors. . . . The power to sell was the power to destroy, and the sale was the destruction and extinction of the property. If there were other unsecured creditors at the time of this assignment, and no other property of the debtor

than that conveyed in the mortgage, out of which creditors could make their debts, the fraudulent intent would seem to be irrebuttable. A clear benefit is secured to the debtor and a clear right is withheld from the creditor beyond what the law permits. Here is not only a retention of possession by the assignor, which is presumptive evidence of fraud, but there is the further power to dispose of it for the debtor's benefit, and still more, the exercise of that power annihilates the thing itself. We have, then, one of the strongest cases of presumptive fraud"; and in the same case, 80 N. C., 161: "The only rebutting evidence adduced against the fraudulent purpose inferred from the provisions of the deed itself and their obvious and necessary effect upon the rights of creditors is found in the declaration of the several parties to the transaction, that an intent to favor the mortgagor, or to delay or defraud his creditors, was not in their minds at the time. This cannot be allowed to remove the legal presumption arising from the facts. Acts fraudulent in view of the law because of their necessary tendency to delay or obstruct the creditor in pursuance of his legal remedy do not cease to be such because the fraud as an independent fact was not then in mind. If a person does and intends to do that which from its consequences the law pronounces fraudulent, he is held to intend the fraud inseparable from the act."

And this has been affirmed in *Holmes v. Marshall,* 78 N. C., 264; *Boone v. Hardie,* 83 N. C., 475; *Booth v. Carstarphen,* 107 N. C., 400; *Cowan v. Phillips,* 119 N. C., 28; *Edwards v. Supply Co.,* 150 N. C., 172.

The principles to be deduced from these authorities are:

1. That a mortgage upon a stock of goods, the possession of which is left with the mortgagor, to secure a debt maturing in the future, which contains no provision for an account of sales and the application of the proceeds to the debt, is presumptively fraudulent as to existing creditors.

2. That the motive or intent entering into the transaction is immaterial, and that the presumption of fraud cannot be rebutted by proving the absence of an actual intent to defraud.

3. That the presumption of fraud may be rebutted by proving that there was no other creditor of the mortgagor at the time of the registration of the mortgage, or, if there was such creditor,

that the mortgagor owned other property at that time, which could be subjected to payment of the debt, sufficient to pay such creditor.

It has also been held that such a mortgage as we have described is valid as to debts contracted subsequent to its registration. *Messick v. Fries,* 128 N. C., 454.

The case of *Bynum v. Miller,* 86 N. C., 559, and the same case, 89 N. C., 393, proceed on a different principle. In those cases the contest was between the mortgagee and a purchaser from the mortgagor, and the Court said, in 86 N. C., 562: "Whatever diversity of views may exist elsewhere, the law is well settled by adjudications in this State, that a subsequent purchaser of personal property from one who has previously made a fraudulent assignment of it, or an assignment without consideration and for his own benefit, whether the purchase be with or without notice and for a valuable consideration, and such assignment has been proved and registered as required by law, stands in the place of his assignor, and neither is permitted to impeach its force and validity. The estoppel upon the assignor extends to his subsequent vendee, and as to both, the conveyance, though it may be void as to creditors, is equally efficacious as to them."

Nor is there anything in *Kreth v. Rogers;* 101 N. C., 270, which was approved in *Brown v. Dail,* 117 N. C., 46, in conflict with these views. It is true, there were existing creditors in the *Kreth case,* but these were paid in full, and the controversy was between the first and a second mortgagee. In the first mortgage there were stipulations as to the manner in which the business should be conducted by the mortgagor, and, among others, that no purchases should be made except for cash, and it appeared that $600 was paid on the debt in a short time, and upon these facts the Court held, if there was a presumption of fraud, it was rebutted.

Applying these principles, we are of opinion there was error in refusing to submit the issue of fraud.

We also think the tender of judgment ought not to have been admitted in evidence, although we doubt if, standing alone, this would justify a new trial, as it is not clear it was prejudicial to the defendants.

The statute authorizing a tender of judgment (Revisal, sec. 860) says that the tender, when not accepted, "is to be deemed withdrawn, and cannot be given in evidence," and while this provision is primarily for the protection of the one making the tender, and to prevent its introduction against him, the statute is a part of the wholesome scheme devised to encourage compromises and settlements, before and after action commenced, and the purpose of the statute can be best subserved by holding according to its language that a tender of judgment unaccepted "cannot be given in evidence," and can only be used after verdict, before the judge, to enable him to adjudge who shall pay the costs.

It appears to us a little remarkable that after the plaintiffs introduced the tender, and insisted on it, that the defendants should have recovered less than the sum offered, the amount of the tender being $395 and the judgment being for $386.21, the last sum being obtained by deducting $78.29, the answer to the first issue, from the value of the goods as found by the jury, $462.50, although there is a mistake of $2 in the calculation.

The facts bearing on the second issue are not clearly stated, but we are inclined to the opinion that after-acquired goods did not pass under the mortgage as executed, and that the issue was material.

If so, his Honor instructed the jury in one part of the charge that it was to be determined by the greater weight of the evidence, and in another, without correcting this error, that the evidence must be clear, strong, and convincing.

These instructions are inconsistent, and constitute reversible error. *Patterson v. Nichols,* 157 N. C., 412.

The verification of the account complies substantially with the requirements of the statute.

For the errors pointed out, there must be a new trial.

New trial.