## MORRIS PLAN BANK OF VIRGINIA v. COOK.

### In re EGGLESTON.
### No. 3219.

Circuit Court of Appeals, Fourth Circuit.
Jan. 12, 1932.

Q. K. Nimocks, of Fayetteville, N. C. (Nimocks & Nimocks and Q. K. Nimocks, Jr., all of Fayetteville, N. C., on the brief), for appellant.

A. E. Cook, of Fayetteville, N. C. (Cook & Cook, of Fayetteville, N. C., on the brief), for appellee.

Before PARKER, NORTHCOTT, and SOPER, Circuit Judges.

SOPER, Circuit Judge.

J. H. Eggleston, who had been engaged in the jewelry business at Fayetteville, N. C., filed a voluntary petition in bankruptcy on January 19, 1931. The Morris Plan Bank of Virginia, appellant in this court, filed proof of secured debt against the bankrupt estate in the sum of $4,500, representing the balance on a loan of $6,000 made by the bank on September 13, 1930. The transaction was evidenced by a promissory note of the bankrupt, and a deed of trust given to secure it, covering the fixtures, bills, and accounts receivable, and the stock of merchandise located in the jewelry store. The deed of trust or mortgage was duly registered under the North Carolina law. The trustee in bankruptcy, on behalf of the general creditors, objected to the claim on the ground that the deed of trust was invalid and did not constitute a lien on the property described. Evidence was taken before the referee who sustained the objections of the trustee, so far as they applied to the stock of goods and to the bills and accounts receivable, but held that the claim was secured by lien upon the furniture and fixtures. The bank appealed from this decision, which upon review was sustained

by the District Judge. It is conceded by the parties to this appeal that the decision was correct in so far as it sustained the lien upon the furniture and fixtures, and denied it as to the bills and accounts receivable. The question which remains is whether the deed of trust constitutes a valid lien in favor of the bank on the bankrupt's stock of merchandise.

When the mortgagor applied to the bank for the loan, he gave it a financial statement showing that his net worth was $45,360.78, and the bank believed it to be true. But it was not true, and at the end of three months the borrower applied for the benefit of the bankruptcy law. When he got the loan he owed twenty-five or thirty other creditors, the large majority of whom were still unpaid when he filed his petition in bankruptcy. He had no other property liable for the payment of his debts than that covered by the deed of trust. That instrument did not contain an express permission to the mortgagor to remain in possession of the stock of goods and to continue the sale thereof in the usual course of business; but the undisputed evidence is that the parties to the transaction contemplated that he should have these privileges. The mortgage provided for the payment of $500 monthly on the principal of the debt until it was fully paid; but it contained no provision for an account of the sales of the goods and the application of the proceeds toward the payment of the debt. There had previously been four similar transactions between the parties, and in each case the borrower gave a mortgage upon his stock of goods, fixtures, and accounts receivable, but retained possession and sold the merchandise in the usual course of business unfettered by the existence of the mortgage.

The mortgagor used the borrowed money in this case to cancel a previous loan with the bank and to pay other creditors of the business. He remained in possession and continued to sell the goods as theretofore, using the proceeds to meet various obligations of the business, as well as his personal living expenses. Three monthly payments on account of the debt were made in accordance with the agreement; the fourth installment coming due six days before the petition in bankruptcy was filed. The cash sales for the months of October, November, and December exceeded in the aggregate the total payments on account of the mortgage debt; but it may be, as the bank contends, although the evidence does not show it with certainty, that the payments on the debt exceeded the net proceeds of the sales.

Section 67a of the Bankruptcy Act (11 USCA § 107(a), provides that "claims which for want of record or for other reasons would not have been valid liens as against the claims of the creditors of the bankrupt shall not be liens against his estate." The question whether the deed of trust in this case is valid as against the creditors of the bankrupt must be determined by the law of North Carolina. Holt v. Crucible Steel Co., 224 U. S. 262, 32 S. Ct. 414, 56 L. Ed. 756; In re Sachs (C. C. A.) 30 F.(2d) 510. Section 1005 of the North Carolina Code (C. S. 1919) is a substantial re-enactment of the Statute of 13 Eliz. c. 5, § 2, and provides in substance that every grant and conveyance of goods and chattels devised to delay, hinder, and delay creditors of their just and lawful actions and debts, shall be utterly void and of no effect. The validity of a mortgage upon a stock of goods, retained in possession by the mortgagor, with the right to sell in the course of business, was considered by the Supreme Court of North Carolina in Cheatham v. Hawkins, 76 N. C. 335, and 80 N. C. 161. The mortgage expressly reserved the right of possession to the mortgagor and by implication gave him the right to sell the mortgaged property. It was held that such a document was presumptively fraudulent, and that, when it was considered in connection with evidence showing that the mortgagor had other creditors, but no other property with which to satisfy their claims, the presumption of fraud became so strong that it could not be removed by the testimony of the parties that the intent to defraud was not in their minds when the mortgage was executed. At 76 N. C. 338, the court said:

"The power to sell was the power to destroy and the sale was the destruction and extinction of the property. If there were other unsecured creditors at the time of this assignment and no other property of the debtor than that conveyed in the mortgage, out of which creditors could make their debts, the fraudulent intent would seem to be irrebutable. A clear benefit is secured to the debtor and a clear right is withheld from the creditor beyond what the law permits. An assignment cannot cover up and preserve the property for the debtor's use or protect it from the remedies and demands of the creditors. Here is not only a retention of possession by the assignor, which is presumptive evidence of fraud, but there is the further power to dispose of it for the debtor's benefit, and still more, the exercise of that power annihilates the thing itself. We have then one of the strongest cases of presumptive fraud. It is clear that if there is no proof to rebut the presumption there is nothing for the jury to pass upon and the presumption of fraud raised by the law becomes conclusive."

When the case was heard by the Supreme Court a second time (80 N. C. 161), it appeared that, upon the retrial of the case below, testimony to rebut the fraud had been given by the parties to the mortgage who swore that, in making and accepting the deed, they did not intend thereby to hinder, delay, or defraud other creditors of the mortgagor or to secure any benefit to him or his family. Commenting upon this evidence, the court said (page 163 of 80 N. C.):

"This cannot be allowed to remove the legal presumption arising from the facts. Acts fraudulent in view of the law because of their necessary tendency to delay or obstruct the creditor in pursuit of his legal remedy, do not cease to be such because the fraud as an independent fact was not then in mind. If a person does and intends to do that which from its consequences the law pronounces fraudulent, he is held to intend the fraud inseparable from the act. To leave a stock of goods after they have been conveyed by mortgage in the debtor's possession and subject to his exclusive control and disposition as if they were his own while they are at the same time placed beyond the reach of execution, is itself a fraud; because it does secure ease and exemption to the debtor and obstructs the creditor's remedial process for the enforcement of his debt against the property."

In the later case of Grocery Company v. Taylor, 162 N. C. 307, 78 S. E. 276, it was held that a chattel mortgage on a stock of merchandise to secure a note could not be maintained against an assignment to secure creditors because it was provided in the mortgage that the mortgagor might sell the merchandise thereby conveyed without making provision for the application of the proceeds of sale. The charge of fraud was made by the assignee for the benefit of creditors. Commenting upon the facts of the case, the court said (page 310 of 162 N. C., 78 S. E. 276, 277):

"If we were dealing with any other class of property than a stock of goods, or if it was necessary in this case to prove a corrupt and fraudulent intent, we would hold there was no such evidence, as there is nothing in the evidence suggesting that the plaintiffs [mortgagees] had any unlawful or wrong purpose, but the character of the property and the admitted facts are such that there

arose a presumption of a legal fraud, which the plaintiffs were required to rebut."

The court then cited the case of Cheatham v. Hawkins, supra, and, showing that it had been affirmed in a number of subsequent cases, said (page 311 of 162 N. C., 78 S. E. 276, 278):

"The principles to be deduced from these authorities are:

"(1) That a mortgage upon a stock of goods, the possession of which is left with the mortgagor, to secure a debt, maturing in the future, which contains no provision for an account of sales and the application of the proceeds to the debt, is presumptively fraudulent as to existing creditors.

"(2) That the motive or intent entering into the transaction is immaterial, and that the presumption of fraud cannot be rebutted by proving the absence of an actual intent to defraud.

"(3) That the presumption of fraud may be rebutted by proving that there was no other creditor of the mortgagor at the time of the registration of the mortgage, or if there was such creditor that the mortgagor owned other property at that time, which could be subjected to payment of the debt, sufficient to pay such creditor."

■ It is clear that the mortgage in the pending case must be condemned by the application of these principles. Conceding that the mortgagee was influenced by the statement furnished by the mortgagor showing his solvency, and therefore had no actual intent to hinder, delay, or defraud his creditors, it is nevertheless true that the mortgagor was left in possession of the stock of goods with leave to sell them in the usual course of business. Other debts were outstanding at the time. Under these circumstances, it was incumbent upon the mortgagee, under the law of North Carolina, if it would safeguard its mortgage, either to have provided therein for an accounting of the sales and an application of the proceeds to the mortgage debt, or to make certain at its peril that the mortgagor owned other property sufficient to take care of his other creditors.

■ The bank in the pending case attempts to avoid the effect of the state decisions by pointing out certain circumstances as tending to rebut the presumption of fraud. They are: (1) That the mortgagee was furnished with a financial statement by the mortgagor showing a large excess of assets over liabilities; (2) that the mortgagor was required to pay $500 monthly on account of the debt and this provision should be considered equivalent to an accounting of the proceeds of sale and an application thereof to the debt; and (3) that the proceeds of the sales were honestly used in paying the legitimate expenses of the business. It is earnestly contended that these circumstances should be held sufficient to rebut the presumption of fraud, in view of the decision in Kreth v. Rogers, 101 N. C. 263, 7 S. E. 682, and that in Davis v. Turner, 120 F. 605, which came to this court from the Eastern District of North Carolina. These cases furnish some support to the argument, but they were rendered prior to Grocery Company v. Taylor, supra, and we are obliged to follow the later deliverance, since it reaffirmed the earlier case of Cheatham v. Hawkins, and involved facts more nearly resembling those in the case at bar. Under the prevailing rule, it is no answer to the charge of invalidity for the parties to say that they did not intend fraud when the paper was executed, or that the mortgagor has actually accounted to the bank for the merchandise sold. Such a mortgage as we have here is to be judged rather by what the mortgagor is permitted to do under its terms than by his actual performance. The storekeeper in this case was at liberty to do as he pleased with the proceeds of his sales, so long as he kept his word to pay $500 monthly to the mortgagee; and this arrangement was not equivalent to a definite promise to apply the proceeds of sale to a payment of the debt.

The North Carolina law is no more stringent in its regulation of chattel mortgages than the rule generally maintained, for it is widely held that, when the mortgagor of a stock in trade is permitted by the mortgagee to remain in possession and to make sales therefrom in the ordinary course of business, applying the proceeds to his own use if he sees fit, the transaction is fraudulent and void as to creditors. It does not matter whether the permission is expressly set out in the mortgage or in some collateral agreement, oral or written. The deed is considered to be in practical effect a fraud upon the rights of creditors without regard to the actual intent of the parties thereto. See Robinson v. Elliott, 22 Wall. 513, 22 L. Ed. 758; 11 Corpus Juris, 573; In re Joseph (D. C.) 43 F.(2d) 252.

The order of the District Court is therefore affirmed.