**COGGIN v. HARTFORD ACCIDENT &**
**INDEMNITY CO.**
**No. 20.**

District Court, M. D. North Carolina.
Jan. 14, 1935.

Lee Overman Gregory, of Salisbury, N. C., for plaintiff.

A. J. Fletcher and Ruark & Ruark, all of Raleigh, N. C., for defendant.

HAYES, District Judge.

W. E. Graham, the bankrupt, was a road contractor. In 1928, he was awarded certain contracts for road construction by the state highway commission of North Carolina and a like commission of South Carolina. He was required to give a surety bond for the faithful performance of his contracts. Upon his written applications, dated October 2, 1928, the defendant became surety. Graham became hopelessly insolvent, owing debts in excess of $100,000. On March 21, 1929, the defendant procured Graham to execute a deed of trust against all of his personal property to secure the defendant against any loss which it had sustained or might thereafter sustain by virtue of its suretyship on the various projects. The deed of trust was never recorded. On April 2, 1929, Graham defaulted, and on April 3, the highway commission called on the surety to complete the contracts.

The defendant went upon the three projects in North Carolina on March 29, 1929, and took possession of Graham's machinery, teams, equipment, and supplies under a written order from Graham to do so. The defendant then let the completion of the work to the contractors, and on or about April 22, 1929, executed to them a bill of sale for Graham's property. The property was never returned.

On May 17, 1929, an involuntary petition in bankruptcy was filed against Graham, and on June 19, 1929, he was adjudicated a bankrupt.

The defendant filed its claim for the full amount of its loss as an unsecured claim and made affidavit that it had no security, and received none, and thereafter participated in the creditor's meeting for the election of trustee. However, with the consent of plaintiff, the referee later permitted the claim to be amended and filed as a secured claim. C. L. Coggin was elected trustee, and brings this suit to compel an accounting, for the value of the property taken and for the cancellation of preference and fraudulent transfers.

The defendant contends that the applications are conveyances of the property executed during the solvency of the bankrupt, and that possession of the property was taken before bankruptcy and that the transfer is valid. It also contends that the state, under its contract, had the right to use the equipment for the completion of the job; that the surety was subrogated to the rights of the state. It further contends that the trustee was notified of the whereabouts of the equipment after the completion of the work and that it was his failure to take the property that caused the loss.

■ The applications, in so far as they profess to convey property, are chattel mortgages and are not valid as against the trustee without registration. Commercial Casualty Insurance Co. v. Williams, 37 F.(2d) 326 (C. C. A. 4th).

■ The deed of trust executed on the 21st day of March, 1929, and never recorded, is invalid as to the trustee. It was executed within four months of adjudication in bankruptcy, when the bankrupt was insolvent and when the defendant knew he was insolvent, and that the conveyance would effect a preference. Higdon v. Jones, 64 F.(2d) 296 (C. C. A. 4th).

■ When the defendant proved its total claim as an unsecured debt and participated in the creditor's meeting for the purpose of electing a trustee favorable to it and then shifted its status to that of a secured creditor, it thereby waived its security, if any it had. It could not be an unsecured creditor and then shift to the status of a secured creditor. Proving a secured debt as an unsecured claim constitutes a waiver of the security. In re O'Gara Coal Company (C. C. A.) 12 F.(2d) 426, 46 A. L. R. 916; 11

USCA § 93, subd. (e), note 9, page 256, where numerous authorities are cited.

■ In determining whether a transfer by bankrupt is a preference under sections 60a, 60b, of Bankruptcy Act (11 USCA § 96 (a, b), the time for testing the validity of the transaction is the date of the transfer, and not the date of recording. If the elements of a preference are not present at the date of transfer, the conveyance is valid against the trustee. Carey v. Donohue, 240 U. S. 430, 36 S. Ct. 386, 60 L. Ed. 726; Martin v. Commercial National Bank, 245 U. S. 513, 38 S. Ct. 176, 62 L. Ed. 441. The question has since been presented to various circuit courts. First National Bank of Lincoln v. Live Stock National Bank, 31 F.(2d) 416 (C. C. A. 8th); Hardwick Bank & Trust Company v. McFarland, 43 F.(2d) 807 (C. C. A. 5th); Hetherington v. Rudisill, 28 F.(2d) 713, 62 A. L. R. 377 (C. C. A. 4th); and In re Cunningham (Higdon v. Jones) 64 F.(2d) 296 (C. C. A. 4th), in which Brigman v. Covington, 219 F. 500 (C. C. A. 4th) is disapproved. The last two cases were construing the North Carolina registration act.

■ A valid mortgage executed and delivered before, but registered within, four months of the filing of petition in bankruptcy is not a voidable preference, although at the time of recording the grantor is insolvent, and known by the mortgagee to be insolvent, and that a preference would be effected. Higdon v. Jones, supra; Bank of Wadesboro v. Little, 4th Circuit, June 11, 1934, 71 F.(2d) 513.

■ Under C. S. § 3311 of North Carolina, a chattel mortgage is good against bona fide purchasers for value and against creditors only from registration. The mortgage, however, is good between the parties without registration. Leggett v. Bullock, 44 N. C. 283; McBrayer v. Harrill, 152 N. C. 712, 68 S. E. 204; Gosney v. McCullers, 202 N. C. 326, 162 S. E. 746, and, when registered, is good against creditors. A general creditor must yield to the lien of the mortgage from the moment of its registration, unless the lien can be successfully assailed as a fraudulent conveyance. I find no authority in this state which divests the lien of a registered mortgage in favor of a general creditor. Before a creditor can defeat the lien of the mortgage, he must acquire a prior lien by way of judgment, as against land, and by levying an execution against personal property. Under the law of North Carolina a

judgment is not a lien on personal property except from levy of execution.

The registration act, C. S. § 3311, is a substitute for possession by the mortgagee. If the mortgagee as such takes possession of the mortgaged property, it renders registration unnecessary. Possession, in such circumstances, will render the mortgage as good as it would be if registered. Cowan v. Dale, 189 N. C. 684, 128 S. E. 155.

If possession is to be substituted for registration under C. S. § 3311, it seems that the possession should be by virtue of the mortgage. Every possession may not be in that capacity. In the instant case, the record shows very clearly that possession of the property was not taken in the capacity of mortgagee. The defendant obtained possession by promising the contractor a preference when letting the contract for completion. The motive of the bankrupt, to the knowledge of surety, was to perpetrate a fraud on his creditors. The transaction is void and cannot supply the place of registration. In three days after he surrendered possession under this agreement, the surety stopped all work on the projects, and in less than three weeks executed to finishing contractor bills of sale for the entire property of Graham on the three projects. These events happened in April, 1929. In May the petition in bankruptcy was filed. In August the defendant filed its claim as unsecured and made oath that it had not received any security, nor was its claim then secured. In September it furnished trustee a list of the property supposed to remain on the projects, saying it claimed possession thereof no longer. Moreover, in order to get possession, it promised him that he should have preference when the contract was reawarded and could have the property back, and it constantly urged Graham to assign the property before a receiver was appointed, or bankruptcy proceeding intervened and got possession, with full knowledge that he owed over $100,000; that his assets consisted of the personal property and amounts due on these projects; that insolvency proceedings were inevitable—numerous judgments having been taken and executions outstanding—and having accepted a chattel mortgage on all this property on March 21, 1929, which it did not record, and claiming it expended over $40,000 as surety for Graham, it is utterly unreasonable to conclude that defendant went into possession as mortgagee, or that it retained possession in that capacity. I cannot hold that such possession thus obtained and retained supplied the place of registration under C. S. § 3311.

Bearing in mind that the surety was financially interested in the successful completion of the various contracts by the bankrupt; that the bankrupt would be unable to obtain credit if he had executed a mortgage on all that he had, and the mortgage was on record so that creditors would become aware of its existence; that the evidence in the record shows that he did obtain credit in the performance of these contracts in an amount in excess of $100,000; that many judgments had been taken against him on those accounts and execution thereon issued—the surety, realizing his insolvency, and that insolvency proceedings were inevitable, withheld from record its application agreements in order to afford the bankrupt an opportunity to obtain this credit, which inured to the benefit of the surety, and committed a fraud in law, as to such creditors to whose rights the trustee in bankruptcy succeeds. It would be unconscionable to permit any unrecorded applications under such circumstances to have priority over general creditors.

The manner in which the surety obtained possession of the property is wholly inconsistent with any theory of possession as mortgagee for purposes of foreclosure, or under any circumstance which would dispense with the necessity of recording applications. The evidence discloses that the surety, prior to the taking of the mortgage on March 21, advanced some funds with which to pay labor until the bankrupt could collect monthly estimates. The surety was not relying upon the applications as securing it, for it took the chattel mortgage on March 21, securing past indebtedness as well as any that might arise in the future in connection with these contracts, although that arrangement was abandoned by bankrupt. Then the surety went to the bankrupt on March 29, and pointed out to him that it would be difficult, if not impossible, for him to complete the contracts because of the attitude of his creditors; that they were likely to bring proceedings in the state court and have a receiver appointed, or to put him into bankruptcy, in which event he, and the surety alike, would suffer, and then and there induced him to give it a written order to his superintendents on the various projects to deliver possession of his property to the surety, on the surety's promise to give the contractor preference in letting contracts for completion. Acting upon this promise,

on March 29 he gave these orders as requested and the defendant took possession of the property under those circumstances. But, the stage was not yet ready to protect the surety at the expense of the other creditors, therefore, it goes through the formality of having the bankrupt to confess his inability to complete the work, and for the state highway commission to declare the bankrupt in default and then order the surety to complete the contracts.

Having then ousted the bankrupt from the possession of the property under the promise as aforesaid, and having obtained the declaration of his default, and the order from the state highway commission for the surety to proceed with the completion of the contracts, the surety then ignored its promise to the bankrupt, and without regard to the rights of the bankrupt's creditors, let contracts for the completion of the various projects, without any foreclosure under mortgages, or any order of the court. It treats the property of the bankrupt as its own, and sells the same to a subcontractor, executing bills of sale therefor and placing the property beyond its own control, and beyond the reach of the bankrupt, and, it thought, beyond the reach of the bankrupt's creditors. Thereupon, some of the creditors, feeling aggrieved, filed an involuntary petition in bankruptcy, and adjudication follows. The surety comes in as a general creditor and makes proof of its claim, making oath that it has no security and that it had received none. A month later, after the property of the bankrupt had been scattered and dissipated, it furnished the trustee in bankruptcy with copies of bills of sale, together with a list of the property supposed to be at the various projects, and tells the trustee that it no longer has any use for the possession of the same.

 In this suit, brought by the receiver to cancel the chattel mortgage and these applications as preference, and also to set them aside as fraudulent conveyances, and to require the surety to account for the value of the property, it defends by alleging that the application blanks were mortgages, and that it obtained possession of the property before the filing of the petition in bankruptcy, therefore, the trustee in bankruptcy is powerless to cancel the same on the grounds of preference. It also defends upon the ground that it was a surety and was subrogated to such rights as the state highway commission of North Carolina enjoyed, and,

inasmuch as the state could have used the property in completion of the contracts and account for the value thereof, it had the same right. It then avers that it merely permitted its subcontractors to use the property for the purpose of completing the contracts, and that the use of the property, the value of which the state was obligated to pay, would have increased the costs of the surety, and having expended more than it received from all sources on the various projects, and having furnished the trustee in bankruptcy a list of the property, it avers that its duty was fully performed and it was in nowise accountable to the trustee in bankruptcy for the value thereof.

Under the foregoing circumstances, I am of the opinion that the possession by the surety of the bankrupt's property was in subrogation to such rights as the state of North Carolina had; that the possession was not in its capacity as mortgagee and the possession under these circumstances could not take the place of registration, and since the mortgage, itself, and the application blanks, if not fraudulent, were not registered, they are invalid as against the trustee in bankruptcy.

In Weaver v. Chunn, 99 N. C. 432, 6 S. E. 370, 372, the mortgagee forcibly took possession under a mortgage recorded in the county where the personal property was located, whereas it should have been recorded in the county where the mortgagor resided, but the Supreme Court of North Carolina held that such possession was not good as against a subsequent mortgage properly recorded, although the subsequent mortgage was nothing more than a deed of assignment. The question of getting possession under an unrecorded mortgage was presented to the court in this case, and it said: "Counsel for the appellant contended also, that, as the latter got actual possession of the property under the deed to him, such possession rendered his title good and effectual. This is a misapprehension. The deed as against the appellees was absolutely void, and passed no title to the appellant. He had the simple possession of the property without any right or title thereto as against creditors and purchasers for a valuable consideration. * * * The statute rendered the deed of trust to the appellant wholly nugatory as to the appellees." This case is cited with approval in Industrial Discount Corporation v. Radecky, 205 N. C. 163, 170 S. E. 640. See Keepers v. Fleitmann, 213 Mass. 210, 100 N. E. 333.

Chief Justice Clark, writing the opinion in McBrayer v. Harrill, 152 N. C. 712, 68 S. E. 204, 205, said: "That a mortgage shall be a lien only from its registration. But, as between the parties, a mortgage or deed is valid without registration. * * * The personal representative stands in the shoes of his testator or intestate, and the unregistered mortgage has the same lien as it had between the parties."

In Hinton v. Williams, 170 N. C. 115, 86 S. E. 994, 995, it was held that where a mortgage was not registered until after bankruptcy, the lien was lost; that a trustee in bankruptcy is vested as to the property of the bankrupt, "with all the rights, remedies, and powers of a creditor holding a lien by legal or equitable proceedings," and that the trustee does not merely step into the shoes of the bankrupt, as was held in York Manufacturing Company v. Cassell, 201 U. S. 344, 26 S. Ct. 481, 50 L. Ed. 782.

█ The surety would have been entitled to use the equipment for finishing the projects in subrogation to the rights of the state, but it did not do so; it exercised absolute dominion over the property of the bankrupt by selling the same, and executing bills of sale therefor. It then and there placed the property beyond its power to restore, and beyond the control of the trustee. Subrogation to the rights to use property confers no right of ownership, and the disposal of the property is a violation of conduct consistent with equity and good conscience. The defendant is liable to the trustee for the value of the property due at the time of wrongful conversion. Having placed the property beyond the reach of the trustee, he is entitled to recover the value at the time of its taking, with interest. Buffum v. Barceloux, 289 U. S. 227, 53 S. Ct. 539, 77 L. Ed. 1140.

█ While the surety contends that it was entitled to use the property for the completion of the projects, and the value should be determined, if it is liable at all, at the date of the completion of the work, the answer is, that it did not use the property but exercised absolute dominion over it. It is true that the master found the value as of March 29, the time when the property was delivered to the surety, instead of its value on the 21st day of April, when the surety exercised dominion over it and sold it. But, the surety had no right to complain at these findings. There was no evidence that the property was used in the interim, nor that it deteriorated in its value.

There was some suggestion that the master was under the impression that he had to accept the valuation of some of the witnesses, and that he was not at liberty to accept a medium between these estimates. I do not believe that he is bound by the estimate of either, for the testimony is merely an estimate of value.

In Morrison v. McLeod, 37 N. C. 108, Ruffin, Chief Justice, said: "Suppose any number of witnesses, with equal intelligence and integrity and equal opportunities of knowing or judging * * * to appear before a jury to depose to the value of a thing, or to the amount of damages, and to give different estimates: how can a decision be made but by splitting the differences between them? When there is an equal probability that the one is as much too low as the other is too high, is it not safe and reasonable to take the middle point between them?"

█ The complainant insists that the defendant should be held accountable for the value of all property where it was subsequently repossessed from the defendant under superior title, so that the matter could be administered in bankruptcy and let the bankruptcy court determine for itself the validity of such liens. In view of the stipulation of facts and since this is a proceeding in equity and the court is holding the surety entitled to the possession only in subrogation to the rights of the state, I am of the opinion that the surety should not be held accountable for the value of the property taken away from its assignee under superior title.

█ The defendant insists that it should not be required to pay for the value of mortgaged property regardless of its not being repossessed. But it has produced no proof of its succession to the rights of mortgagees. Since it does not claim under any of the mortgages to third parties, it cannot complain when it is required to pay the value to the trustee in bankruptcy. If such mortgages are valid, the mortgagees have their remedies in the court of bankruptcy. Certainly it is of no concern to the defendant.

█ There is another reason why application blanks cannot be held valid mortgages. The authorities in this state have definitely established the principle that a mortgage is not valid if it is given on personal property which is of a consumable nature, or it is

intended for sale where the mortgagor is left in possession and with absolute dominion over the same without being required to account to the mortgagee for the proceeds. Blanton Grocery Co. v. Taylor, 162 N. C. 307, 78 S. E. 276; Cheatham v. Hawkins, 76 N. C. 335; In re Joseph (D. C.) 43 F.(2d) 252, and Morris Plan Bank of Virginia v. Cook, 55 F.(2d) 176 (C. C. A. 4th).

Inasmuch as the mortgagor, if he is to be called such, was given absolute dominion over the so-called mortgaged property, with the right to consume it, and dispose of it without being held accountable to the mortgagee, the instruments, as such, are void.

But there is another insurmountable obstacle in the way of the defendant in respect of the assignment contracts. Clause V under which it claims is as follows: "And the undersigned, as of the date hereof, hereby assign, transfer, and convey to the surety, all the right title and interest of the undersigned in and to all the tools, plant, equipment and materials of every nature and description that may now or hereafter have upon said work, or in, on or about the site thereof, including as well materials purchased for or chargeable to said contract, which may be in process of construction, on storage elsewhere, or in transportation to said site, hereby assigning and conveying also all their right in and to all sub-contracts, which have been or may hereafter be entered into, and the materials embraced therein, and authorizing and empowering said surety, its authorized agents or attorneys, to enter upon and take possession of said tools, plant, equipment, materials, and sub-contracts, and enforce, use and enjoy such possession upon the following conditions, viz.: This assignment shall be in full force and effect, as of the date hereof, should the undersigned fail or be unable to complete the said work in accordance with the terms of the contract covered by said bond, or in event of any default on the part of the undersigned under the said contract."

It is perfectly manifest from the foregoing language that the conveyance, whether it be called an assignment or mortgage, was not to take effect, as such, until the happening of a contingent event, to wit, default. A mortgage which is not to take effect until the happening of a contingent event does not operate as a mortgage until the event happens. 11 C. J. 452. The instrument is governed by rules of construction applicable to contracts generally. Chief Justice Fuller said:

"Where the undertaking on one side is in terms a condition to the stipulation on the other,—that is, where the contract provides for the performance of some act, or the happening of some event, and the obligations of the contract are made to depend on such performance or happening,—the conditions are conditions precedent.

"The reason and sense of the contemplated transaction, as it must have been understood by the parties and is to be collected from the whole contract, determine whether this is so or not; or it may be determined from the nature of the acts to be done, and the order in which they must necessarily precede and follow each other in the progress of performance." New Orleans v. Texas & P. R. Co., 171 U. S. 312, 334, 18 S. Ct. 875, 883, 43 L. Ed. 178.

Applying these principles to clause V, the conclusion is irresistible that the conveyance was on condition of a default, and was not to operate as such until a default occurred, and if default occurred, it would automatically date back to the date of execution. If the conveyance was absolute on the date it was signed, it would be good so far as a preference is concerned. But the conveyance not becoming effective until the date of default, does not operate as a conveyance until the event happens. The default having arisen on March 29, 1929, the conveyance is finally executed on that date. The mortgagor was then insolvent and known to be, by the surety. It was within four months of the filing of petition in bankruptcy. For these reasons, the application contracts are preferences. To hold otherwise would give a debtor an opportunity to mortgage, or assign, his property on condition and, although it could not operate as a mortgage until the event occurred, date it back or provide for it to operate retroactively and defeat the statute concerning preferences.